STATE of Maine

v.

Mark CHAREST.

Supreme Judicial Court of Maine.

Argued June 8, 1987.

Decided July 30, 1987.

---

Mary Tousignant, Dist. Atty., David D. Gregory (orally), Alfred, for plaintiff.

Sheldon J. Tepler, (orally), Hardy, Wolf & Downing, P.A., Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Mark Charest appeals his conviction of two counts of theft, 17–A M.R.S.A. § 353 (1983), entered after a jury trial in the Superior Court, York County. Charest contends that the court erred: (1) in failing to grant a mistrial on the ground that the State committed allegedly prejudicial discovery violations, (2) in failing to grant a mistrial on the ground that the State elicited evidence of wrongdoing not charged in the indictment, and (3) in refusing to give a requested jury instruction. We affirm the judgment.

This case arises out of the following facts. The defendant was implicated in two burglaries committed in 1985. The first burglary occurred in Berwick in March of 1985 at the "Lion's Shed," a company owned by Robert Lion, from which $14,000 worth of tools were stolen. The second burglary occurred in April of 1985 at the residence of Robert Lavoie in York, from which several 4–wheel all-terrain-vehicles (ATV's) valued at over $5,000 were stolen.

One of the State's principal witnesses was James Photiou, a dairy farmer who lived in Berwick. Photiou, who testified as part of a negotiated plea agreement under which he cooperated with the State, testified that both the defendant and Edward Ford, a friend of the defendant's, placed tools on Photiou's farm on the morning after the first burglary. The defendant later informed Photiou that the tools had been stolen from the Lion's Shed. Photiou further testified that the defendant and Ford brought four ATV's to hide on his property on the night of the second burglary, although Photiou never saw any of the vehicles. The defendant later informed Photiou that he transported the ATV's to Photiou's farm in a rented U-Haul truck. One of Lavoie's neighbors in York testified that he saw a U-Haul truck parked behind a barn on Lavoie's property on the night that the ATV's were stolen. The general manager for U-Haul in Dover, New Hampshire, testified that the defendant had leased a U-Haul truck two days before the ATV's were stolen, and returned the truck after it had been driven almost 200 additional miles.

Carroll "Jay" Lane, another State's witness, testified that he picked up tools from Ford's house and delivered them to Photiou's farm in March of 1985. Although Lane did not implicate the defendant in the burglaries at trial, in a pretrial interview with Police Chief Asa Morse of Berwick, Lane stated that the defendant and Edward Ford were both involved in the burglary at the Lion's Shed. Police Chief Morse corroborated Lane's testimony regarding the interview. Lane later entered into a negotiated plea agreement with the State, but had to be subpoenaed to testify. The State's final witness, Edward Ford, had pleaded guilty to both burglaries. Although Ford testified that he alone was responsible for the commission of the two offenses, he stated that the defendant may have driven the U-Haul truck at the time of the second burglary. The defendant's sister testified on his behalf that the defendant rented a U-Haul truck at the time of the second burglary in order to help her move some of her personal belongings.

The defendant was indicted on one count of burglary (Count I), 17–A M.R.S.A. § 401 (1983) (Class C), and two counts of theft (Counts II and III), 17–A M.R.S.A. § 353 (1983) (Class B).[1] Following a jury trial, the defendant was found not guilty of burglary and guilty on the two counts of theft. This appeal followed.

---

1. Count III was later amended to allege a Class C theft.

## I.

We first address the defendant's contention that the State committed prejudicial discovery violations. The primary violation concerns the identity of an informant who had anonymously given information to an investigating officer. The defendant moved to discover the identity of the informant, and the court granted the defendant's motion. The transcript of the hearing on the defendant's discovery motion indicates that the State handed the name and address of the informant to the defendant at the hearing. At trial, however, it became apparent that the State had mistakenly provided the defendant with the name of Phillip Caldwell, when in reality the informant was Lane. The defendant sought a mistrial at the time the identity of the informant became apparent. The court denied the motion, stating that "[i]t's a little premature at this point." [2]

The defendant contends on appeal that the Superior Court committed an abuse of discretion in refusing to grant a mistrial. In particular, the defendant contends that Lane was an alcoholic at the time of Lane's interview with Police Chief Morse in which Lane inculpated the defendant in the burglary of the Lion's Shed. After Lane took the stand, the defendant called to the stand Lane's former girlfriend intending to elicit testimony that Lane had been institutionalized for alcohol and drug abuse at the time Lane had given his inculpatory statement. However, the presiding justice sustained the State's objection to her testimony on the grounds that the testimony was irrelevant and that the potential for prejudice outweighed its probative value. The defendant contends that, had the State in-

formed him that Lane was the informant rather than Caldwell, he would have focused more of his energy and resources on attempting to locate Lane before trial.[3] Specifically, the defendant argues that he would have been better able to ascertain whether Lane had in fact been institutionalized for alcoholism and drug dependency at the time he had given his inculpatory statement to the police, and that the State's negligence thereby impeded his ability to attack Lane's credibility at trial.[4]

The trial justice has broad discretion in determining whether to grant a mistrial. *See, e.g., State v. Michaud,* 513 A.2d 842, 853 (Me.1986); *State v. Henderson,* 435 A.2d 1106, 1108 (Me.1981). We find no abuse of discretion here. Although the State demonstrated inexcusable carelessness in supplying the defendant with inaccurate information concerning the identity of the informant before trial for which substantial sanctions could have been imposed, the State's failure to provide the correct name and address did not unfairly prejudice the defendant in this case. Although the defendant was not informed that Lane was the informant until the day of trial, Lane's name appeared on the State's list of potential witnesses, filed by the State almost one month before trial, and a copy of Lane's interview with Police Chief Morse, in which Lane implicated the defendant in the Lion's Shed burglary, was provided in discovery to defendant well in advance of trial. Moreover, the defendant learned the informant's identity on the first day of trial, but Lane was not called until the following day, allowing defense counsel an extra day to prepare for cross-examination.

---

**2.** We note that the defendant did not move for a continuance upon learning the correct name of the informant, nor did the presiding justice find it necessary to grant the defendant additional time or a continuance on his own motion in accordance with M.R.Crim.P. 16(d).

**3.** Defense counsel stated at oral argument that he was unable to determine Lane's whereabouts before trial.

**4.** The defendant does not contend that the State's failure to provide him with the correct identity of the informant in a timely manner before trial limited his ability to cross-examine

Lane at trial in violation of his constitutional right "[t]o be confronted by the witnesses against him." Me. Const. art. I, § 6; U.S. Const. amend. VI; *see also Pennsylvania v. Richie,* —— U.S. ——, ——, 107 S.Ct. 989, 999 n. 9, 94 L.Ed.2d 40 (1987) ("[T]he Confrontation Clause only protects a defendant's trial rights, and does not compel the pretrial production of information that might be useful in preparing for trial"). Indeed, the defendant conceded at oral argument that he had an adequate opportunity to cross-examine Lane at trial.

**468**

Most significant, however, although Lane's trial testimony tended to exculpate the defendant, the defendant knew *in advance* of trial that Lane had given inculpatory information to Police Chief Morse. This knowledge in itself provided a sufficient basis and motive for the defendant to have inquired into any evidence that might have impeached Lane's credibility. The fact that Lane was an informant is therefore not a crucial factor in this case. We therefore conclude that, in these circumstances, the State's negligent failure to provide the defendant with the informant's correct name in no way diminished the defendant's ability to prepare for trial and cannot be deemed to be unfair surprise.

II.

 The defendant's two other assignments of error are also without merit. The defendant contends that the court erred in failing to grant a mistrial on the ground that the State elicited evidence of wrongdoing not charged in the indictment in violation of M.R.Evid. 404(b).[5]

At trial, the defendant objected to the State's questioning of Photiou regarding Photiou's contact with the defendant on the day in which the ATV's were stolen from Lavoie's residence. Photiou testified that the defendant informed him that several "3–wheeler" vehicles were stored on Photiou's property, rather than the 4–wheel ATV's that were actually stolen. The defendant argues that the jury, upon hearing that "3–wheelers" were placed on Photiou's property, had become tainted with knowledge of another possible theft allegedly committed by the defendant involving 3–wheel all-terrain-vehicles. We disagree. The misdescription of stolen property was made by Photiou when his attention was specifically drawn to the events of the time of the theft of the 4–wheel ATV's from Lavoie's property. There was nothing, other than the misdescription as to the wheels, to suggest that some other criminal activity was being inquired into. The trial court,

after hearing Photiou's testimony on this point, determined the reference to "3–wheeler" vehicles to be non-prejudicial. That determination was not clearly erroneous.

III.

The defendant also contends that the court erred in failing to give the defendant's requested jury instruction that he could not be found guilty of a crime by his mere association with another convicted of that crime. We find that the presiding justice adequately instructed the jury on accomplice liability under 17–A M.R.S.A. § 57 (1983). Accordingly, we find no error.

The entry is:

Judgment affirmed.

All concurring.

---

5. M.R.Evid. 404(b) provides:

   **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admis-

sible to prove the character of a person in order to show that he acted in conformity therewith.