Myrtle WOOD

v.

Mervyn WOOD.

Supreme Judicial Court of Maine.

Argued Jan. 7, 1992.

Decided Jan. 31, 1992.

As Corrected Feb. 3, 1992.

Sandra Hylander Collier (orally), Ferm, McSweeney & Collier, Ellsworth, William S. Kelly, Belfast, for intervenor.

Richard Violette (orally), Ferris, Dearborn & Willey, Brewer, for appellee.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

Mervyn Wood appeals from a Superior Court decision (Hancock County, *Kravchuk, J.*), denying his motion for relief from judgment and awarding Myrtle Wood attorneys fees. Gordon Wood, an intervenor in the divorce proceedings, seeks relief from a court order requiring him and his counsel to convey certain alleged property interests in real estate that was part of the marital estate to an overseeing attorney appointed to effectuate the sale of the property provided for in the divorce decree. Finding no abuse of discretion in the Superior Court's denial of Mervyn's Rule 60(b) motion or the award of attorneys fees, and finding Gordon's claim of lack of personal jurisdiction to be completely without merit, we affirm.

Myrtle and Mervyn were married in 1927. The Woods and their six children lived and worked on the family chicken farm. The land amassed by the Woods over the years is estimated now to be worth about a million dollars. A few years after she was married, Myrtle was given a frontal lobotomy. The operation left her docile and compliant.

The four oldest sons, Charles, Richard, Curtis and Gary, resented their father and moved away as soon as they were old enough. Gordon, the youngest son, remained on the farm. Arlene, the only daughter, remained in the area and on good terms with her father. In 1975, Myrtle traveled to California to visit Richard and Charles. She stayed with them for several years.

In 1983, Myrtle wrote Mervyn and requested a divorce. The divorce was bitterly contested. Mervyn, as well as Gordon and Arlene who intervened in the divorce action, alleged that the four brothers forced Myrtle to seek a divorce and that they had mistreated Myrtle. The four brothers contended that throughout Myrtle's marriage to Mervyn she was abused.

Mervyn appealed the divorce judgment, arguing that the Superior Court had erred in denying his motion for a psychiatric examination of Myrtle, denying his and the intervening children's motion to compel dis-

covery by deposition, and in the manner it divided the marital estate. In a memorandum decision, we affirmed the Superior Court on all three issues. *Wood v. Wood,* 510 A.2d 1072 (Me.1986).

Gordon then sued his parents for breach of contract, or in the alternative, equitable entitlement. Gordon's suit was severed, and his suit against his mother heard first. The Superior Court found no oral contract existed between Gordon and Myrtle and that Myrtle had not been unjustly enriched. Gordon dropped his suit against his father, but appealed the Superior Court's decision in the action against his mother. That decision was affirmed. *Wood v. Wood,* No. 5695 (Me. Oct. 22, 1991).

On March 22, 1991, Mervyn filed a Rule 60(b) motion to set aside the divorce judgment. His motion was heard immediately after the Superior Court had ruled against Gordon in his breach of contract action against Myrtle and by the same Justice. The Superior Court denied Mervyn's Rule 60(b) motion and awarded Myrtle attorney fees. This appeal followed. Gordon, who was an intervenor in the divorce action, has filed a purported amicus curiae brief contesting a court order arising out of the property settlement.

### I

■ Mervyn contends that the motion justice erred in failing to recuse herself from ruling on his Rule 60(b) motion. He argues that he should have been allowed a full evidentiary hearing on his motion for relief before another judge. The motion justice had just finished presiding over a four day trial in Gordon Wood's suit against Myrtle. She acknowledged that she might have formed opinions as to the credibility of certain witnesses and that she had heard inadmissible evidence which "would be very hard to put aside...." She stated that "if there's additional and new evidence that's going to be presented I will hold the matter over and have it heard on an evidentiary basis before another judge...." However, she went on to say that "I feel I can divorce factual findings from legal issues," and that she was capable of ruling on issues that were primarily issues of law.

"Recusal is a matter that rests within the broad discretion of the court." *State v. Jacques,* 537 A.2d 587, 591 (Me.1988). The possibility that a motion justice might be improperly influenced by evidence that had been admitted during a previous trial, but would not be admissible in the present case "is a wholly inadequate ground for disqualification." *Town of Eliot v. Burton,* 392 A.2d 56, 58, n. 1 (Me.1978). The motion justice need not disqualify herself if she believes she can act with complete impartiality and where there are no reasonable grounds for questioning her ability to do so. Maine Code of Jud. Conduct Canon 3(C)(1). The motion justice did not abuse her discretion when she decided she was capable of hearing Mervyn's offer of proof and ruling on his Rule 60(b) motion.

### II

■ Under M.R.Civ.P. 60(b), a motion for relief from judgment can be granted for a number of reasons, among them "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial," M.R.Civ.P. 60(b)(2), and "any other reason justifying relief from judgment," M.R.Civ.P. 60(b)(6). A 60(b)(2) motion must be made within one year after judgment is entered. A decision to grant or deny a Rule 60(b) motion is "reviewable by the Law Court only for abuse of discretion." *Warren v. Waterville Urban Renewal Authority,* 290 A.2d 362, 365 (Me.1972).

■ Mervyn argues that he should have been granted relief from judgment because the judgment is void, M.R.Civ.P. 60(b)(4), or under Rule 60(b)(6). However, he fails to offer any basis for his allegation that the judgment is void other than Myrtle's incompetency. Only Myrtle can challenge the judgment as void on these grounds. *See Russo v. Miller,* 559 A.2d 354, 358 (Me.1989) (holding that only the victim of undue influence can bring an action on the ground that he or she was incompetent). He essentially seeks to introduce new evidence on several issues.

The court ruled that Mervyn's offer of proof failed to establish the need to hold an evidentiary hearing prior to ruling on his motion. The court ruled that there was no significant new evidence and that the evi-

dence Mervyn sought to introduce was available to him at the time of the original divorce proceeding. The court's decision finds ample support in the record. The motion justice did not abuse her discretion when she ruled that Mervyn was not entitled to a full evidentiary hearing on the issue of Myrtle's competency, the exertion of undue influence by his estranged children, or the prior finding of irreconcilable differences and denied his Rule 60(b) motion.

### III

■ The Superior Court awarded Myrtle attorney fees for all reasonable costs incurred in defense of Mervyn's Rule 60(b) motion. Mervyn first claims the motion justice lacked the requisite statutory authority to award Myrtle attorney fees. Under 19 M.R.S.A. § 721(2) (Supp.1991), a court may award attorney fees incurred "in defense or prosecution of a divorce." Myrtle's fees were incurred in defense or prosecution of her divorce; in addition, a significant portion of the fees awarded were incurred not in defense of the Rule 60(b) motion, but in efforts to enforce the original judgment.

Mervyn also maintains that the court did not have enough information before it to award attorney fees. The court had an uncontested affidavit of costs and the divorce settlement before it. The court had just presided over a case where the financial holdings and circumstances of the parties had been directly at issue. Such an award is discretionary and accorded great deference on review. *St. Hilaire v. St. Hilaire*, 567 A.2d 1349 (Me.1990). The court did not abuse its discretion when it awarded Myrtle attorney fees.

### IV

■ Gordon Wood was granted intervenor status in the original divorce action. He and his sister, Arlene, were allowed to intervene on the issue of Myrtle's competency. He asked for, and was denied permission to intervene on all real property issues. However, at that point in time he was not the record owner of any of the properties.

The divorce court awarded Myrtle some of the family's real estate holdings as part of the property settlement. Since then Mervyn has twice transferred interests in these very same properties to Gordon, and Gordon has given his counsel a mortgage on those interests. All these transfers were made after the divorce decree had been recorded in the Hancock Registry of Deeds and affirmed on appeal. *Wood*, 510 A.2d 1072.

In 1990, the Superior Court issued an order detailing every step the parties were to take in order to sell a certain piece of real estate, the sale of which had been provided for in the divorce decree. Myrtle complied, Mervyn did not. Gordon moved to stay the ordered sale, citing his status as an intervenor, on the basis of his contract claim against Myrtle. Further efforts were made by the appointed overseeing attorney to clear the way for sale of the property but Mervyn once again failed to cooperate. In 1991, Myrtle asked the court to set aside its 1990 order and grant her exclusive control of the property. Gordon, with his attorney representing him, appeared and moved for a stay pending the outcome of his suit against Myrtle. When Myrtle's motion was heard, Gordon received notice, appeared and participated in the hearing, contesting Myrtle's motion.

The court ordered both parties to transfer all rights in the property to the overseeing attorney to consolidate title and effectuate a sale. The order provided that it would operate directly on the property and the parties, including Gordon and his attorney. Gordon now appeals from that order claiming the court lacked personal jurisdiction over him.

First of all, Gordon has no legal rights in the property. He gained his interest in the land with full knowledge of the recorded divorce decree, that provided for a court

ordered sale at fair market value, and therefore knew the conveyance was fraudulent. Gordon was present and represented by counsel at all times. Once he had an alleged property interest to protect, he was allowed to do so. He appeared at, and participated in, all the hearings. His argument is without any merit whatsoever.

The entry is:

Judgment affirmed.

All concurring.