STATE of Maine

v.

Daniel J. RAMEAU.

Supreme Judicial Court of Maine.

Argued Sept. 5, 1996.
Decided Oct. 29, 1996.

Michael Cantara, District Attorney, Alfred, for the State.

Robert A. Levine (orally), Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Daniel J. Rameau appeals from the order entered in the Superior Court (Cumberland County, *Crowley, J.*) revoking Rameau's probation. The court held the hearing on the revocation of Rameau's probation following a criminal trial at which he was acquitted of the same conduct that formed the basis of his revocation proceeding. Rameau contends that the Judge who entered the revocation order should have recused himself from the revocation proceedings and that the admission at the probation hearing of the alleged victim's testimony from the criminal trial violated Rameau's constitutional rights to due

process and to confront witnesses testifying against him. Finding neither error nor abuse of discretion, we affirm the judgment.

In February 1995, Rameau was charged with violating the terms and conditions of his probation.[1] The motion was based on a charge of unlawful sexual contact in violation of 17–A M.R.S.A. § 255 (Supp.1995), for which he was indicted in Cumberland County. Rameau successfully resisted the State's motion to consolidate the criminal trial with the probation revocation hearing.[2]

At Rameau's criminal trial, the alleged victim of the sexual assault testified and was thoroughly cross-examined by Rameau's attorney. The jury found Rameau not guilty of the criminal charge. A different attorney represented Rameau at the subsequent hearing on the motion to revoke probation. Rameau moved that the Judge recuse himself because he had presided at Rameau's criminal trial, which was based on the same conduct, and because of a comment made at that trial.[3] The court denied the motion.

At the probation revocation hearing, the court allowed the State to present the transcript of the alleged victim's testimony from the criminal trial. The State also proffered evidence from Rameau's probation officer and a Portland police officer who had interviewed the child. Rameau then moved to admit in evidence the remainder of the trial testimony, presented the testimony of a private investigator, and also testified. The court took the matter under advisement and found that Rameau had violated the terms of his probation. The court partially revoked Rameau's probation and ordered him to serve a term of four years of the previously suspended sentence with probation to continue. This appeal followed.

■ Rameau contends that the Judge's failure to disqualify himself from the probation revocation proceeding was a violation of constitutional due process and Canon 3(E)(2)(a) of the Maine Code of Judicial Conduct.[4] Rameau argues that recusal was necessary because the Judge's participation at the criminal jury trial caused him to prejudge the probation matter. Recusal is a matter within the broad discretion of the court. *Wood v. Wood,* 602 A.2d 672, 674 (Me.1992) (quoting *State v. Jacques,* 537 A.2d 587, 591 (Me.1988)).

Rameau argues that recusal is mandated because the Judge had personal knowledge of the credibility of the victim's testimony that Rameau's counsel at the probation revocation proceeding did not have because he did not serve as Rameau's trial counsel. Rameau also contends that the Judge had a personal bias against him because at the criminal trial the Judge entertained defense counsel's questions concerning possible sentences in the event of a guilty plea; Rameau concludes that this knowledge made the Judge believe Rameau was guilty. In addition, Rameau argues that the Judge's comment to Rameau's attorney about hypnotizing the jury shows the court's bias against Rameau. Rameau also contends that the court used knowledge gained at the criminal trial and impermissibly referred to its trial

---

1. Following pleas of guilty on June 15, 1990, Rameau was convicted of two counts of gross sexual misconduct and was sentenced to concurrent fifteen-year sentences, with all but four years suspended, and six years of probation. On February 4, 1993, Rameau admitted violating his probation and was ordered to serve seventy days of the unserved portion of his sentence. Again on September 8, 1993, Rameau was found to have violated his probation and was ordered to serve one year of the unserved portion of his sentence.

2. The probation revocation proceeding was transferred from York to Cumberland County.

3. Following the jury's verdict, the Judge commented to Rameau's attorney in the hallway out-

side the courtroom that the attorney had hypnotized the jury.

4. Canon 3(E)(2) of the Maine Code of Judicial Conduct states in pertinent part:

A judge may disqualify himself or herself on the judge's own initiative without stating the grounds of disqualification, and shall disqualify himself or herself on motion for recusal made by a party, in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding....

notes in determining that Rameau violated the terms of his probation.

■ Generally, knowledge gained in a prior proceeding is not a sufficient ground to recuse a judge in a subsequent matter. The prevailing view is that only knowledge gained from an extrajudicial source supports a motion for recusal. *See* 28 U.S.C. § 455 (1974) (the federal law similar to Canon 3(E)(2)).[5] *See also, United States v. Chantal,* 902 F.2d 1018, 1023 (1st Cir.1990) ("the circumstances calling for disqualification must be personal in the sense that the source of bias/prejudice must arise out of extrajudicial, not judicial, proceedings."). Recently, however, the United States Supreme Court has modified that rule to some extent, holding that the extrajudicial nature of the knowledge is only one factor in determining whether, because of bias, recusal is warranted pursuant to subsections (a) and (b)(1) of section 455. *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* The Court noted that, as a practical matter, the vast majority of cases will involve knowledge gained from an extrajudicial source. *Id.* at 550–52, 554–56, 114 S.Ct. at 1155, 1157.

■ Our jurisprudence is consistent. We have held that the fact that a judge presided at one trial or proceeding will not suffice to support a motion to recuse that judge from a subsequent proceeding. *See Wood v. Wood,* 602 A.2d 672, 674 (Me.1992) ("The possibility that a motion justice might be improperly influenced by evidence that had been admitted during a previous trial, but would not be admissible in the present case 'is a wholly inadequate ground for disqualification.'") (quoting *Town of Eliot v. Burton,* 392 A.2d 56, 58 n. 1 (Me.1978)); *Brendla v. Acheson,* 554 A.2d 798, 799 (Me.1989) ("any bias, to be disqualifying, must stem from extrajudicial sources, not from prior evidence in a case.") (citations omitted); *Barber v. Town of Fairfield,* 486 A.2d 150, 152–53 (Me.1985) (presiding at former hearing not basis for recusal). In *Wood,* we said that a judge need not disqualify if the judge can act "with complete impartiality" and no reasonable grounds exist to question the judge's ability to act in such a manner. 602 A.2d at 674. In this case, neither the knowledge the Judge acquired from the criminal trial, nor the fact that he referred to notes he made during that trial, is sufficient to warrant a recusal from the probation proceeding. Moreover, the statement to the attorney regarding hypnotizing the jury is, at worst, a sarcastic compliment and does not display a deep-seated antagonism rendering a fair judgment impossible.

■ Rameau's additional contention based on due process considerations is also unavailing. There were no improprieties in the court's conduct, and hence it did not approach the egregiousness required to support a due process violation for not granting the recusal motion. *See United States v. International Business Machines Corp.,* 475 F.Supp. 1372, 1390 (S.D.N.Y.1979), *aff'd* 618 F.2d 923 (2d Cir.1980) (citations omitted) (violation of due process unlikely when no statutory duty breached); *see also State v. Friel,* 497 A.2d 475, 477–78 (Me.1985), *cert. denied* 474 U.S. 1032, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985); *State v. Campbell,* 497 A.2d 467, 473–74 (Me.1985), *cert. denied* 474 U.S. 1032, 106 S.Ct. 594, 88 L.Ed.2d 574 (1985).

■ Rameau also contends that the admission of the alleged victim's testimony from the criminal trial violated his right to confront and cross-examine witnesses against

5. 28 U.S.C. § 455 (1974) states in pertinent part:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality reasonably might be questioned.
(b) He shall also disqualify himself in the following circumstances:
    (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .
Section (a) is to be determined objectively while section (b)(1) is a subjective question. *United States v. Chantal,* 902 F.2d 1018, 1022–24 (1st Cir.1990); *see also* A.B.A.Code of Judicial Conduct Canon 3E(1)(a).

him. U.S. Const. amend. XIV; Me. Const. art. I, § 6–A. The right of a criminal defendant to confront witnesses and evidence against him is guaranteed as an element of due process and has been extended to parole and probation revocation proceedings pursuant to both the United States and Maine Constitutions. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation),[6] *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole); *State v. Maier,* 423 A.2d 235, 238 (Me.1980) (probation).[7] Pursuant to these decisions, a limited liberty interest for probationers is protected by constitutional due process considerations.

The United States Supreme Court has noted that those requirements should not be interpreted in an unyielding manner. In *Morrissey,* the Court stated that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489, 92 S.Ct. at 2604. In *Gagnon,* the Court spoke specifically to the right to confront adverse witnesses:

> An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses.... While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.

411 U.S. at 782 n. 5, 93 S.Ct. at 1760 n. 5. M.R.Evid. 1101(b)(4) provides that the rules of evidence do not govern proceedings on probation violations, and we have held that hearsay evidence is admissible in a revocation proceeding. *See Ingerson v. State,* 491 A.2d 1176, 1181 (Me.1985) (*Ingerson II*); *State v. Caron,* 334 A.2d 495, 498 (Me.1975).

The key to the admissibility of hearsay evidence is its reliability. Although we have excluded as "inherently unreliable" and without any foundation the admission of a polygraph test result corroborating a victim's testimony that she was raped, *Ingerson v. State,* 448 A.2d 879, 880 (Me.1982) (*Ingerson I*),[8] we have concluded that a detective's testimony concerning the victim's hearsay statements made soon after the alleged rape did not violate due process when the hearsay was not " 'unreasonably abundant' nor 'highly suspect' " and the parolee had an opportunity to cross-examine the hearsay declarant during the hearing. *Ingerson II,* 491 A.2d at 1181 (quoting *Caron,* 334 A.2d at 498); *see United States v. McCormick,* 54 F.3d 214 (5th Cir.1995), *cert. denied* — U.S. ——, 116 S.Ct. 264, 133 L.Ed.2d 187 (1995) (urinalysis report and affidavit of laboratory director admitted when defendant failed to use other opportunities to present evidence and the test was found reliable); *United States v. Pratt,* 52 F.3d 671 (7th Cir.1995), *cert. denied* — U.S. ——, 116 S.Ct. 216, 133 L.Ed.2d 147 (1995) (probation officer's report of defendant's urine test properly admitted); *Commonwealth v. Durling,* 407 Mass. 108, 551 N.E.2d 1193 (1990) (no violation for admission of two police reports because factual nature and similarity of reports indicated reliability even though the court made no

---

**6.** The list of rights includes:

> (a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)....

*Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972).

**7.** In Maine, statutory guarantees also exist for probationers, including the "opportunity to confront and cross-examine witnesses against the person...." 17–A M.R.S.A. § 1206(4) (Supp. 1995).

**8.** *Ingerson I* presented the special problem of polygraph examinations. We have "on many occasions ... noted the unique problem presented by evidence offered at trial regarding the polygraph or lie detector test. Not only do there remain 'fundamental concerns with the reliability of the polygraph as an indicator of truthfulness,' but there is also 'the dangerous possibility that credibility will ... be evaluated by the device rather than by the trier of fact.' " *Heselton v. Wilder,* 496 A.2d 1063, 1065 (Me.1985) (quoting *State v. Ledger,* 444 A.2d 404, 415–16 (Me. 1982)).

finding of good cause); *Gilbert v. State*, 765 P.2d 807 (Okla.Crim.App.1988) (no error in admitting transcript of preliminary hearing at later suspended sentence revocation hearing even though transcript was only evidence admitted by the state before resting).

■ Although live testimony is generally preferred over the admission of a cold transcript, the thorough cross-examination of the victim in the criminal case provides a good measure of reliability.[9]  Moreover, Rameau was aware that the State would be relying on the transcript of the prior trial for the victim's testimony, yet he made no attempt to secure her presence at the probation revocation hearing.  Because the victim's testimony was not "inherently unreliable," we discern no error or abuse of discretion in the particular circumstances of this case.

The entry is:

Judgment affirmed.

All concurring.

---

9. "The theory of the hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertions of a witness, may be best brought to light and exposed by the test of cross-examination."  John Henry Wig-more, WIGMORE ON EVIDENCE § 1362, at 3 (1974 Chadbourn Rev.).  Even though the rules of evidence do not apply here, the victim's previous cross-examination satisfies the primary concern of the hearsay rule.