**Donald BOYCE, Petitioner**

v.

**COMMISSIONER, MAINE DEPART-MENT OF CORRECTIONS, Respondent**

**Civil No. 01–162–B–S.**

United States District Court, D. Maine.

July 23, 2002.

Donald Boyce, Thomaston, ME, pro se.

William R. Stokes, Assistant Attorney General, Augusta, ME, for respondent.

### ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

SINGAL, District Judge.

The United States Magistrate Judge filed with the Court on May 16, 2002 her Recommended Decision. Plaintiff filed his objections to the Recommended Decision on July 1, 2002. I have reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Magistrate's Judge's Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determine that no further proceeding is necessary.

1. It is therefore *ORDERED* that the Recommended Decision of the Magistrate Judge is hereby *AFFIRMED*.

2. It is further *ORDERED* that the 28 U.S.C. § 2254 Petition is *DISMISSED* and the Writ is *DENIED*.

### RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION

KRAVCHUK, United States Magistrate Judge.

Donald Boyce has filed a petition pursuant to 28 U.S.C. § 2254 seeking relief from

his conviction by the State of Maine for depraved indifference murder arising from Boyce's participation in an inebriated game of Russian roulette. In his amended petition Boyce proffers four grounds that he asserts entitle him to federal habeas relief from his state court conviction. (Docket No. 4.) The State of Maine has filed a response arguing that the court should deny relief on each of the four grounds. (Docket No. 9.) For the reasons articulated in the discussion below, I **RECOMMEND** that the Court **DENY** Boyce § 2254 relief.

### Background

Boyce stands convicted of the June 13, 1996, shooting death of Sean Bither. On the evening of Bither's death Boyce was drinking heavily and, in the presence of many witnesses, fired a pistol some thirty times in the house where Bither died. Boyce shot Bither point blank in the head.

Prior to trial, on a motion by his attorney Boyce's request for a Stage I forensic examination was granted and a report was filed. Approximately three months prior to trial Boyce pressed a motion seeking recusal of the trial judge and that motion was denied. Prior to trial Boyce pled guilty to the charge of possession of a firearm by a felon.

Boyce was tried on three counts: intentional and knowing murder, depraved indifference murder, and terrorizing with the use of a dangerous weapon against another individual present at the shooting. The jury found that Boyce was not guilty of intentional and knowing murder, but found that he was guilty of the depraved indifference murder and the terrorizing counts.[1]

---

1. After his conviction Boyce moved for a new trial and acquittal on grounds not contested

On August 27, 1997, Boyce was sentenced to forty years on the depraved indifference conviction. The court imposed five-year sentences on the terrorizing and possession of a firearm convictions, to run concurrently with each other.

Boyce pursued a direct appeal and a petition for post-conviction review in which he asserted multiple claims some of which mirror the claims raised here. The Maine Supreme Court sitting as the Law Court issued a decision denying Boyce's direct appeal on September 30, 1998. Hearings on Boyce's post-conviction petition were held and that court issued its decision and order on May 24, 2001. The Law Court denied Boyce a certificate of probable cause with respect to the post-conviction determination on July 20, 2001. I discuss the scope and conclusions of the Law Court's determination on direct appeal and the post-conviction court's disposition when discussing each of Boyce's 28 U.S.C. § 2254 claims below.

### Discussion

Analysis of the State's determination is not freeform: the limitations of my review of Boyce's state conviction are set by statute:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a[s]tate court shall not be granted with respect to any claim that was adjudicated on the merits in [s]tate court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

---

before this court.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.

§ 2254(d). This standard of review does not apply, however, "unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of the federal law as established by the Supreme Court of the United States." *Everett v. Beard*, 290 F.3d 500, 507 (3d Cir.2002). The First Circuit has been crystal clear on this score. *See DiBenedetto v. Hall*, 272 F.3d 1, 6 (1st Cir.2001); *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir.2001). When the state court failed to so address Boyce's constitutional claims then I do not defer to the court's resolution of mixed questions of law and fact, though I presume the factual findings to be correct unless they are unsupported by the record. *Id.* The State concedes that Boyce has exhausted the remedies available in the state courts. *See* 28 U.S.C. §§ 2254(b)(1),(c).

## A. Grounds Raised in this 28 U.S.C. § 2254 Petition

Boyce demarcates four grounds that he contends entitle him to habeas relief from his state conviction, his overarching assertion being that he was convicted of depraved indifference murder when he is in actuality only guilty of manslaughter.

### 1. Constitutionality of the Depraved Indifference Murder Statute and the Propriety of the Jury Instructions

Because of the overlapping concerns that animate these claims, I treat together Boyce's second and third grounds, attacking the propriety of the jury instructions and the constitutionality of the depraved indifference murder statute. Five of Boyce's ineffective assistance claims contained in Ground One relate to these Ground Two and Three claims, but I address these with his other ineffective assistance claims below where they can be framed in terms of the appropriate Sixth Amendment assistance of counsel standard.

### a. Contours of the section 2254 challenges and presentation of issues to the State courts

Boyce asserts that Maine's depraved indifference murder statute is unconstitutional, either facially or as applied to Boyce, because manslaughter is for all intents and purposes not a lesser included offense and, Boyce ardently contends, he is only guilty of manslaughter. Though he did not press his constitutional challenge on direct appeal, Boyce mounted this challenge in his state post-conviction proceeding, both directly and as an ineffective assistance of counsel claim. (Amended Pet. for State Post-conviction Review at ¶¶ 2(a), 6.) In that proceeding he argued that the depraved indifference murder statute was vague and violated his right to due process and equal protection because the jury could not reach the question of whether Boyce's conduct was actually manslaughter rather than murder. (*See, e.g.,* Post–Conviction Post-hearing Mem. ¶¶ 8–10.)

Boyce makes a number of related claims concerning the jury instructions. He asserts that the jury instructions improperly shifted the burden on to him with respect to intent in that the instruction on depraved indifference murder at the close of evidence "created an irrebutable presumption" vis-à-vis intent.[2] He

---

**2.** Boyce complains that core elements of the offense of depraved indifference murder were introduced at the instruction stage, giving him no opportunity to rebut them. This

also contends that the instructions by the court were such that once the jury concluded that Boyce killed the victim it had to find the intent for the crime charged. Boyce further claims that the instructions were confusing with respect to differentiating manslaughter from murder and depraved indifference murder for the jury and did not help the jury make the leap from intentional and/or knowing murder to manslaughter.

■ Though Boyce brought a burden shifting challenge in front of the Law Court it certainly did not align with the Ground Two challenge before this court so as to satisfy the 28 U.S.C. § 2254 exhaustion requirements. 28 U.S.C. § 2254(b)(1)(A); *see generally Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Martens v. Shannon*, 836 F.2d 715, 716–17 (1st Cir.1988).[3] Boyce did make the jury instruction argument that he makes in this federal forum before the post-conviction court. (Pet. for State Post Conviction Review at 8–11.) The State argues to this court that Boyce procedurally defaulted this claim by failing to present the challenge on the direct appeal. However, the post-conviction court addressed the claim and it is not for this court to conclude that that consideration was an error pursuant to 15 M.R.S.A. § 2128(1). Because the post-conviction court treated this claim on its merits *after* Boyce's direct appeal, the State has waived any objection to this claim based on a failure to raise it in the direct appeal. *Fortini*, 257 F.3d at 45.

### b. The statute, the instructions, and the determination by the State courts

#### i. The statute

Boyce was convicted under a version of the statute that provided: "A person is guilty of murder if ... [he] engages in conduct which manifests a depraved indifference to the value of human life and which in fact causes the death of another human being." 17–A M.R.S.A. § 201(1)(B)(West 1985). Subsection 1–A provided that if a person was charged with depraved indifference murder then "the crime of criminally negligent manslaughter shall be deemed to be charged." *Id.* § 201(1–A).[4]

---

claim has no buoyancy as Boyce was indicted on the depraved indifference murder count and knew full well going into trial that the State would be presenting evidence to meet this charge.

3. In his direct appeal to the Law Court Boyce complained of an "inadvertent shifting of the burden of proof" onto him. However, his plaint at that stage was with the instructing judge's inadvertent initial statement instructing that if the jury found that "the Defendant failed to prove any one of the elements of the crime of terrorizing with a dangerous weapon, then you must find the Defendant, Donald Boyce not guilty of terrorizing with a dangerous weapon." (Appellant Br. Law Ct. Docket No. ARO–97–552 at 41.) As Boyce acknowledges, prior to sending the jury to its deliberations, the judge corrected the misstatement with this clarification: "I made a fairly obvious misstatement of the law," indicating that instead of this above quoted passage he should have stated that if the jury found "the State has failed to prove any one of the elements of the crime you must find him not guilty." (Tr. Vol IV at 67; *see also id.* at 63.) The Law Court identified no merit in this argument. *Boyce*, 1998 ME 219, ¶ 9, 718 A.2d at 1100.

4. During the 1980s the Maine Legislature tinkered with the depraved indifference murder statute. In 1983 it added subsections to define "conduct which manifests a depraved indifference to the value of human life." *See State v. Michaud*, 513 A.2d 842, 847 (Me. 1986) (describing the legislative history of the statute with respect to a case in which the defendant was charged under the 1983 version of the statute). However, the Law Court concluded that this statutory definition was

### ii. The instructions

The trial court instructed the jury first on the elements of intentional or knowing murder. (Tr. Vol. IV at 55–57.) With respect to the state-of-mind requirement of that charge, that is whether Boyce acted "intentionally or knowingly," the court explained that "[a] person causes death intentionally if it is his conscious object to cause death" and "[a] person causes death knowingly if he is aware that it is practically certain that his conduct will cause death." (*Id.* at 56.)

The court then proceeded to instruct on depraved indifference murder:

> Turning now to alternative form of the single crime of murder, and that is the second charge, that the defendant caused Sean Bither's death by engaging in death-producing conduct which manifests a depraved indifference to the value of human life, this alternative involves two separate considerations. First, the State must prove beyond a reasonable doubt that the death-producing conduct of the defendant was conduct by which its very nature creates a very high degree of risk that the conduct will result in serious bodily injury or death.
>
> This is a very high degree of risk that is something more than a mere unreasonable risk or even a high degree of risk. It's something less than certainty or practical certainty. It is more than recklessness or criminal negligence. Instead, this very high degree of risk is such as to make it very likely that serious bodily injury or death will result from such conduct.

> ... It is not necessary that you find that the defendant himself was actually aware of the high death-producing potential inherent in his conduct. However, you must find that such risk would have been apparent to a reasonable and prudent person in the defendant's situation and, thus, that the defendant should have been aware of the serious death-producing potential inherent in his own conduct.
>
> Put differently, death-producing conduct will only justify a verdict of guilty of depraved indifference murder if the jury could find that conduct was so heinous in the eyes of the law as to constitute murder.
>
> Second, the State must prove beyond a reasonable doubt that the defendant's conduct when examined in light of the totality of the circumstances reflects such indifference to the value of human life by the defendant that it would generally be regarded by any reasonable person as depraved. As used here, totality of the circumstance mean the nature and purpose of the actor's conduct, the circumstance known to the actor, and the circumstance which would have been apparent to a reasonable and prudent person in the actor's situation. Depraved means outrageous, revolting, savage, brutal, shocking, readily demonstrating an almost total lack of concern or appreciation for the value of human life.

(*Id.* at 57–59.)

On the heels of this explication the court provided the following bridge from the two

"ostensibly as the term was construed by this court" except that with respect to the degree of risk of death the legislature had inserted a subjective, "he knows" as an alternative (as opposed to a replacement) for the objective, "a reasonable and prudent person in his situation would know." *Id.* In 1985 the statute was repealed eliminating this brief standing statutory definition. *Id.* 847 n. 2. Boyce was charged in 1996. In light of the reasoning of *Michaud* and the legislature's reversion to the original form of the statute it is fair to conclude that the interpretation of the depraved indifference offense remains consistent with *Michaud* and the pre-*Michaud* Law Court decisions.

forms of murder to the manslaughter instruction:

> If ... you conclude that the State has established ... the death of Sean Bither and [that] the defendant caused his death beyond a reasonable doubt, but has failed to establish the third necessary element of murder, namely that the defendant caused Sean Bither's death either intentionally or knowingly or by engaging in death-producing conduct which manifests a depraved indifference to the value of human life, you must next consider whether the defendant has committed the lesser included crime of manslaughter.

(*Id.* at 59–60.)

The court next instructed on manslaughter:

> The elements of manslaughter under Maine law are as follows. A person is guilty of manslaughter if he recklessly or with criminal negligence caused the death of another human being. Thus, the crime of manslaughter is the same as the crime of murder except that death is caused recklessly or with criminal negligence instead of intentionally or knowingly.
>
> To prove that the defendant is guilty of manslaughter, the State must prove beyond a reasonable doubt that the defendant's conduct which caused Sean Bither's death was done, as I've indicated, either recklessly or with criminal negligence. A person acts recklessly when he consciously disregards a risk that his conduct will cause such—will cause death. To be reckless, that person's disregard of the risk when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

> A person acts with criminal negligence when he fails to be aware of a risk that his conduct will cause such a result or death. To be criminally negligent, a person's failure to be aware of the risk when viewed in light and [sic] of the nature and purpose of his conduct and the circumstances known to him must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

(*Id.* at 60–61.)

### iii. The State's determination

With respect to Boyce's challenge to the jury instructions the post-conviction court concluded:

> As this court understands it, the petitioner's argument is that once the jury was instructed on the two forms of murder, it had no basis to find the petitioner guilty of the lesser offense of manslaughter as the elements of the latter offense are indistinguishable from "depraved indifference" murder. That being so, a verdict of guilty of murder was inevitable and the constitutional presumption of innocence as to the greater charges was impermissibly vitiated.
>
> As part of this argument, the petitioner appears to suggest that the trial judge should have instructed on the lesser offense of manslaughter first. No law is cited in support of this proposition. Indeed, 17-A M.R.S.A. § 13-A(1) (1982), Maine case law, *see, e.g., State v. Barden,* 432 A.2d 404, 412 (Me.1981), and logic dictate that an instruction on the greater offense charged be provided first, and the jury then told that the failure of proof as to a particular element in the offense charged would then allow them to consider a particular lesser included offense. To instruct in reverse order would not only confuse the

jury, it would deprive the prosecution of the legitimate opportunity to obtain a judgment on the greater charge on which it had produced competent evidence. Such would also obviously be contrary to the public interest and legislative intent.

More to the point, the trial judge's instructions unambiguously explained to the jury the elements of the two forms of murder and advised them they could find the petitioner guilty of one of them depending on their findings first as to whether or not the petitioner's acts were knowing or intentional and, if not, if his acts manifested depraved indifference to the value of human life. T., Vol. 4, pp. 56–59. Once so explained, the jury was then told that the failure of proof as to these potential elements required the jury to consider the lesser offense of manslaughter.

These instructions were plain, clearly expressed, and well within the capacity of any reasonable juror to understand. As important, they correctly stated Maine law using language nearly verbatim as to instructions which have been approved by our Law Court in explaining our law of homicide. *See State v. Crocker*, 435 A.2d 58, 62–68 (Me.1981). All this being so, there was no basis to challenge them at trial and there are none here on constitutional or other grounds. *See State v. Michaud*, 513 A.2d 842, 846–848 (Me.1986) (depraved indifference murder statute is constitutional).

(Post-conviction Decision & Order at 6–8.) The final sentence is the post-conviction court's only statement vis-à-vis the constitutionality of the statute.[5]

### c. Recommended section 2254 disposition of challenges to the statute and instructions

Boyce challenged the depraved indifference murder statute on two grounds: that it is unconstitutionally vague as to what behavior it proscribes and that his conviction under this statute infringed his right to due process because of the inability to defend at once against the intentional and knowing murder count and the depraved indifference murder count. This challenge merges with his challenge to the jury instruction; if there is a constitutional infirmity with the depraved indifference murder statute then the instructions would also be improper.

With respect to vagueness challenges to criminal statutes the United States Supreme Court has stated:

> The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

*United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). This is the case the Maine Law Court has relied on when addressing vagueness challenges to 17–A M.R.S.A. § 201(1)(B). *See State v. Michaud*, 513 A.2d 842, 847 (Me. 1986).[6]

---

**5.** Though in his notice of appeal to the Law Court and his memorandum in support of certificate of probable cause Boyce pressed his direct attack on the constitutionality of the statute and the jury instructions, in its opinion denying the certificate of probable cause the Law Court Justice referred only to Boyce's attacks on the statute and the instruc-

tions in their guise as ineffective assistance of counsel claims. Therefore I take the post-conviction court's ruling on these direct attacks as the last word from the State courts.

**6.** *Michaud* concluded that the statute was neither unconstitutionally vague, *id.* at 847, nor unconstitutionally arbitrary, *id.* at 847–48.

The Supreme Court has also made it clear that the vagueness inquiry under the Due Process clause is "as applied" because the claims "rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright,* 486 U.S. 356, 362, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Accordingly the court must examine these cases "in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Id.See also State v. Crocker,* 435 A.2d 58, 77–85 (Me.1981) (Carter, J. concurring with whom Godfrey, J. joined) (arguing that the majority framed the constitutional inquiry into Maine's depraved indifference murder statute too broadly, and that the constitutionality of the statute should be determined by the facts of each case).

There is a line of Law Court cases that address constitutional challenges to Maine's depraved indifference murder statute. Boyce's prolonged experiment with Russian roulette, his firing of multiple bullets, and his final point-blank shooting of Bither certainly falls within the parameters of these precedents in terms of meeting the definition of a depraved indifference to human life. *See Michaud,* 513 A.2d at 844–48, 853–54 (defendant, while intoxicated and after an evening of confrontation with his long-time female companion, while aware that there were two adults and five children inside, fired two shots into a home killing a child); *State v. Joy,* 452 A.2d 408, 409–10 (Me.1982) (defendant set fire to a stairway in an apartment house after 1:00 a.m. knowing there was at least one person in the building, killing a sleeping occupant); *Crocker,* 435 A.2d at 62–68 (defendant's stepson died after being brought to the hospital malnourished, dehydrated, and comatose due to a head injury, with bruises, scrapes, abrasions, and burn marks all over his body, pressure soars on his body from having been bed ridden and unattended for a prolonged period, and testimony having linked the defendant to these injuries); *State v. Flick,* 425 A.2d 167, 168–69 (Me. 1981) (defendant, who was in the middle of a divorce with his wife, went to her house with a knife, both became engaged in removing hooks from fishing poles, and the wife ended up dead with multiple stab wounds); *State v. Goodall,* 407 A.2d 268, 271–72, 279–80 (Me.1979) (defendant and another spent a night physically and verbally threatening girlfriends and neighbors, and fatally beat a neighbor in two phases, the second phase lasting at least one half of an hour); *State v. Woodbury,* 403 A.2d 1166,1167–68, 1171–73 (Me.1979) (defendant participated in a pre-arranged prison novelty room ambush and beating of a fellow inmate, during which he thrice struck the decedent in the head with a two-by-four and after which he left the room while his victim lay unconscious).

In light of the statutory language and this interpretative case law "a person of ordinary intelligence" had "fair notice," *Harriss,* 347 U.S. at 617, 74 S.Ct. 808, that an evening spent discharging a loaded firearm in a house occupied by people "is forbidden by the statute," *id.* I cannot but conclude that "reasonable persons," *Maynard,* 486 U.S. at 362, 108 S.Ct. 1853, who engaged in the conduct attributed to Boyce, "would know that their conduct [put them] at risk" for a homicide conviction, *id.* Therefore, the State court's determination was not contrary to or an unreasonable application of, what is, clearly established federal law.

With respect to Boyce's other constitutional challenge, the best way to frame it is that his conviction is unconstitutional because it deprived him of equal protection in that it was arbitrary for him to be

convicted of depraved indifference murder when his conduct really qualified as manslaughter.[7]

In *Michaud* the Law Court addressed a similar challenge: "that depraved indifference murder," which at that time had a subjective component in addition to the objective standard, *see supra* note 4, "is not rationally distinguishable from the crime of manslaughter, 17–A M.R.S.A. § 203 (1983), and that the statute imposing a more severe penalty for depraved indifference murder is thus necessarily arbitrary and therefore invalid." 513 A.2d at 847. The *Michaud* court rejected the argument based on its prior precedent stating: "we expressly addressed and rejected the contention that depraved indifference murder cannot be rationally distinguished from the crime of manslaughter. In *State v. Crocker*, 435 A.2d at 63–67, we discussed the differences between the two crimes and concluded that although they differ only in degree, they are constitutionally distinguishable." *Id.* at 847–48.

*Crocker* did undertake an in-depth analysis of this concern with a version of the statute equivalent to the one Boyce was charged under and concluded:

In sum, the legislature by returning in 1977 to the pre-Code homicide standards and reinstituting criminal liability for murder on the basis of an objective showing of brutal or heinous conduct established a scale of actionable wrongdoing with respect to death-producing conduct that retained the differences between the several civil and criminal actions established by pre-Code common law and statutes. In so doing, the legislature recognized anew the familiar and long-established principle that "an act

causing death may be murder, manslaughter, or misadventure, according to the degree of danger attending it," *Commonwealth v. Pierce*, 138 Mass. 165, 178 (1884) (Holmes, J.).

435 A.2d at 66. *See also State v. White*, 460 A.2d 1017,1019–20 (Me.1983) (Law Court reaffirming its conclusion that depraved indifference murder is rationally distinguishable from manslaughter, the more severe penalty for the former is not arbitrary, there being a distinction of degrees).

■ Boyce's conduct, the jury found, had a degree of danger that justified a murder conviction. Though Boyce protests heartily that the jury never moved beyond their conclusion vis-à-vis depraved indifference murder to consider whether the conduct constituted the lesser included offense of manslaughter, he had no constitutional entitlement to consideration of the lesser included offense once the jury found beyond a reasonable doubt that his conduct was sufficiently dangerous as to reflect a depraved indifference to the value of human life.

Having concluded that the depraved indifference murder statute was constitutional as applied to Boyce, I also conclude that the post-conviction court's determination concerning jury instructions was not contrary to nor an unreasonable application of federal law. The post-conviction court's characterization of Boyce's claims and its resolution was reasonable.

### 2. Ineffective Assistance of Counsel Claims

Boyce's "Ground One" is a potpourri of ineffective assistance of counsel allegations

7. Boyce posed this argument before the post-conviction court. (Amended Pet. Post-conviction Review ¶ 4.) The post-conviction court did not directly address the challenge in dis-

missing his constitutional claims but cited the full discussion in *Michaud* that covered both the vagueness and the arbitrariness challenge.

against his attorney at trial and on appeal. I have grouped them where they overlap.

It was to the post-conviction court that Boyce first framed these as ineffective assistance claims. That court cited Maine law for the standard used to analyze ineffective assistance of counsel claims, stating:

> [T]he Law Court has determined that a grievant making such a claim must establish that his counsel's performance was below that which may be expected of an ordinary fallible attorney. *State v. Brewer*, [1997 ME 177, ¶ 15,] 699 A.2d 1139, 1144 (Me.1997). If established, the petitioner must also show that counsel's ineffectiveness prejudiced potential defenses. *Id.* Failure to establish either of these elements precludes relief. *Id.*

(Post–Conviction Decision & Order at 1–2.)

The standard for analyzing ineffective assistance of counsel claims for purposes of 28 U.S.C. § 2254(d)(1) is that articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* Boyce must demonstrate that "counsel's performance was deficient." 466 U.S. at 687, 104 S.Ct. 2052. He must also show that counsel's deficient performance "prejudiced the defense." *Id.* There is no requirement that the Court analyze these separate prongs in any particular order; a failure to show prejudice will suffice to defeat a particular claim, without reference to the level of counsel's performance. *Id.* at 697, 104 S.Ct. 2052. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

The Law Court in *Brewer* made it clear that its standard for gauging ineffectiveness of counsel under the Sixth Amendment, though initially articulated prior to the teaching of *Strickland,* conformed to *Strickland. Brewer,* 1997 ME 177, ¶ 15, 699 A.2d at 1143–44; *see also id.* at 1997 ME 177, ¶ 20, 699 A.2d at 1144. Accordingly, I conclude that the post-conviction court identified the proper Sixth Amendment standard for analyzing Boyce's ineffective assistance of counsel claims.[8] I address the claims that relate to Boyce's previously discussed Ground Two and Three challenges first.

#### a. Failure to move to narrow the charge

Boyce asserts that his trial attorney failed to move prior to trial to have the State narrow its charge by selecting between either intentional or knowing murder *or* depraved indifference murder. In a connected claim of deficiency Boyce asserts his attorney should have made an *in limine* motion to have the State indicate whether depraved indifference murder would be defined to the jury as requiring an objective or a subjective state of mind. Boyce contends that as a result he had to defend against three types of murder and as a consequence the trial court's instructions proceeded from intentional and knowing murder, to depraved indifference murder, and then to manslaughter.

Boyce squarely raised this challenge in front of the post-conviction court. In its decision and order that court concluded that "our Law Court in the case of *State v. Hickey,* 459 A.2d 573, 581 (Me.1983) held that the State cannot be required to elect between these two theories of murder, even if the result is that the accused may

---

8. If anything, the post-conviction court's phrasing of the second prong, requiring only that the defendant show that counsel's ineffectiveness somehow prejudiced a *potential* defense, is more defendant friendly than *Strickland*'s articulated test.

have to prepare a multi-faceted defense, provided that the State can present competent evidence to support those theories." (Post-conviction Decision & Order at 3.)

*Hickey* is a well-reasoned case and Boyce's prosecution falls well within its parameters with respect to a permissible multi-count indictment. 459 A.2d at 579–80 & n. 4, 582–83. As the Bither murder involved facts that made it appropriate for the State to proceed on the two theories of murder I can identify no prejudice within the meaning of *Strickland* in his counsel's failure to move to narrow the charge.

### b. Failure to propose jury instruction that facilitated a manslaughter verdict and failure to object to the State's proposed jury instruction

■ Boyce complains that his trial attorney did not introduce a jury instruction that would facilitate the jury's ability to "make the leap" from intentional murder to manslaughter due to diminished capacity. Boyce seems to argue that an instruction could have been crafted that would turn the jury away from settling on the depraved indifference murder verdict and towards manslaughter in light of Boyce's intoxication and his resulting diminished capacity.

Boyce also asserts that his trial attorney either failed or refused to object to a jury instruction proffered by the State that belatedly shifted the burden to Boyce. Boyce cites to pages forty-four through sixty-nine of the instruction transcript. This, Boyce contends, is an error that trial counsel compounded by failing to preserve the issue for and raise it on appeal.

As already determined with respect to Ground Two, the jury instructions that were delivered were in step with Maine law, as the post-conviction court determined:

These instructions were plain, clearly expressed, and well within the capacity of any reasonable juror to understand. As important, they correctly stated Maine law using language nearly verbatim as to instructions which have been approved by our Law Court in explaining our law of homicide. *See State v. Crocker,* 435 A.2d 58, 62–68 (Me.1981). All this being so, there was no basis to challenge them at trial and there are none here on constitutional or other grounds. *See State v. Michaud,* 513 A.2d 842, 846–848 (Me.1986) (depraved indifference murder statute is constitutional). Accordingly, the court cannot conclude that either prong of the test as to counsel's effectiveness has been established as to this claim.

(Post-conviction Decision & Order at 7–8.) Furthermore, the testimony at the post-conviction hearing indicated that it was Boyce's own attorney that crafted the instructions, not the State, and that he attempted to craft the depraved indifference instruction as favorable as possible for Boyce by using phrases out of the case law to heighten the standard and have the jury consider Boyce's intoxication with respect to the *mens rea* less depraved indifference murder count. (Feb. 26, 2001, Tr. at 67–68, 75–76.) There was nothing improper about the instructions in light of Maine Law; it would be redundant to revisit the inquiry into the propriety of the instructions.

### c. On appeal, counsel failed to challenge the constitutionality of Maine's depraved indifference murder statute and failed to preserve Winship issues

Boyce posits error in his attorney's failure to challenge the constitutionality of the depraved indifference murder statute as applied to him, a challenge that according to Boyce should have been waged because manslaughter is not a lesser-included offense. Boyce also identifies ineffective-

ness in the fact that his attorney did not queue-up "*Winship* issues" and "related elements of the State[']s proof" for direct appeal, thereby prejudicing Boyce. Boyce did not waive or authorize his attorney to waive these "issues, rights, and/or immunities."

Given that Maine's deliberate indifference murder statute, as applied to Boyce, is not susceptible to a constitutional attack, Boyce's attendant ineffective assistance of counsel argument fails both prongs of *Strickland.* With respect to the principal of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), there is a slightly different bent to this claim. *Winship*, addressing a juvenile criminal charge, stated that: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. 1068. Certainly this holding was clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) at the time of Boyce's conviction. However, Boyce is not contending that the jury did not find every element of the crime of depraved indifference murder beyond a reasonable doubt. Rather, he seems to be arguing that the crime should have included a *mens rea* element that required the jury to find facts concerning Boyce's state-of-mind (that could be defended by an intoxication defense). Viewed as such it whittles down to the same challenge to the constitutionality of the statute already rejected both on its face and in the guise of an ineffective assistance of counsel claim.

### d. Failure to obtain and file an affidavit to support recusal motion

■ Here we part way with the ineffective assistance of counsel claims that relate to Boyce's challenges to the constitutionality of and jury instruction on depraved indifference murder. As part of his multi-layered ineffectiveness of counsel ground, Boyce states that he instructed his counsel to move for the recusal of the trial judge and counsel failed to file an affidavit with this motion that stated the basis for the motion.

To summarize, the trial judge in this criminal matter wanted Boyce to appear as a witness as a non-party to a separate civil matter in front of the same judge. Boyce refused to take the stand in the civil matter and was held in contempt of court. In concluding that Boyce was to be sentenced as a result of this contempt of court, the trial judge ruled that he would order a concurrent sentence on the civil matter when he sentenced him in this, the criminal, action. Thus, Boyce argues before this court that the trial judge had prejudged him guilty of murder or manslaughter.

The Law Court addressed Boyce's challenge to the denial of his pre-trial motion for recusal in its opinion on Boyce's direct appeal.

Boyce ... contends that the court erred when it denied his pretrial motion for recusal. In that motion, Boyce alleged that the trial justice was biased because he had previously entered a contempt order against Boyce in an unrelated civil proceeding. As we have made clear, information gained or opinions formed by a trial judge based on events or facts presented in the same or other judicial proceedings do not constitute a basis for recusal except in the extraordinary circumstances that demonstrate a " 'deep-seated favoritism or antagonism that would make fair judgment *impossible.*' " *State v. Rameau,*

685 A.2d 761, 763 (Me.1996) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)) (emphasis added). No such circumstances were demonstrated here. Indeed, Boyce concedes that he failed to obey a direct order of the court in the separate matter that formed the basis of his motion. We find no error in the court's denial of the motion for recusal. *Boyce*, 1998 ME 219, ¶ 8, 718 A.2d at 1100.

In his petition for post-conviction review, Boyce framed his complaint concerning recusal as an ineffectiveness of counsel ground. He asserted that his trial counsel should have obtained an affidavit from Boyce setting forth the colloquy that took place between Boyce and the bailiffs after Boyce failed to take the witness stand in the civil case. (Pet. for State Post-conviction Review at 6–7; Amended Pet. for State Post-conviction Review at ¶ 2(c).) Boyce states that the judge was "so angry at defendant, that he told the bailiff[ ]s that they were to use physical violence against the defendant if required, to drag him to the court room." Boyce contended that if his trial attorney had obtained the affidavit as required for such motions "the fact that the trial judge had commented regarding defendant would have been entered into the record, establishing the factual predicate necessary to have the judge, Judge Pierson, recuse himself from the trial."

The post-conviction court addressed this claim without reference to the presence or absence of the affidavit. It concluded:

> The petitioner also claims that his trial attorney failed to properly challenge the trial judge's impartiality and seek his recusal because he had in a separate, unrelated action held him in contempt. The record reveals otherwise. Counsel did request the trial judge's recusal, was unsuccessful, but pursued this objection on appeal where it also failed. *State v. Boyce*, 1998 ME 219, ¶ 8, 718 A.2d 1097, 1100. No deficiency in counsel's performance may be found here either; he did precisely what it is the petitioner claims he did not do.

(Post-conviction Decision & Order at 8.)

Because the post-conviction court did not squarely address the ineffectiveness challenge in the manner it was framed by Boyce (the question of the affidavit and what evidence of bias Boyce would have been able to present with effective assistance of counsel), I ordered a supplementation of the record to assure the adequacy of this court's review of the question. (Docket No. 10.)

I have reviewed the transcripts from the February 26, 2001 hearing. Boyce testified as to his claim of bias. He stated:

> [The affidavit] would have said that the bailiffs threatened to drag me over here bodily, because they were ordered to do so by the Judge. But I refused to come to testify. There was a civil matter, and I didn't know anything about it. And they just come over there to the jail one day and told me I was coming over to testify. And I told them, no, I'm not going to go testify. I don't know what you're talking about. I was being held on felony charges, and I didn't know anything about any civil charges. I hadn't received a subpoena or summons or anything like that, so—and my lawyer never mentioned it to me, so I just told him I refused to go, and I'm not going. And the Judge ordered them to come get me if they had to drag me over there.

(Feb. 26, 2001, Tr. at 17; *see also id.* at 38–39) Boyce indicated that he thought this was important because the "Judge was obviously mad" at him if he was ordering the officers to drag him to court. (*Id.* at

17, *see also id.* at 37.) Boyce testified that he wanted his attorney to press a properly supported recusal motion because he thought the judge's bias was reflected in this threat to have him dragged into court and the fact that when the judge sentenced him on the contempt of court charge he did so illegally. (*Id.* at 21.) "Now, to me," Boyce testified, "that's saying that I'm already guilty of my felony charges." (*Id.*)

At the hearing Boyce's attorney for the trial and appeal testified that he did not file an affidavit at the time of recusal or as part of the appeal. (*Id.* at 64–65.) He explained that in his view the fact that the judge sentenced Boyce to five months for contempt was indication enough that "the Judge [wa]sn't very happy." (*Id.* at 70–71.) The post-conviction judge also questioned the attorney on this recusal matter and the attorney indicated that he had no direct testimony of what Judge Pierson said about using physical force to drag Boyce to court, just what Boyce said that the bailiffs or deputies told Boyce about what the judge said. (*Id.* at 83–84.) Boyce's affidavit would have contained nothing but his own hearsay testimony about what he said the bailiffs said.

If Boyce's attorney had pressed the motion for recusal with an affidavit by Boyce representing what the court officers said to Boyce concerning what the judge said to them it would not have changed the outcome of the State court's recusal determination. This affidavit would have been nothing more than sworn double hearsay. I cannot see how it would have changed the Law Court's determination vis-à-vis the propriety of recusal. Furthermore, it

was the jury that convicted Boyce not the trial judge and Boyce has not identified any rulings, instructions, or other actions taken by the trial judge that could be construed as reflecting a bias against Boyce.[9] Therefore I cannot conclude that the post-conviction court's determination with respect to this ineffective assistance claim was unreasonable or contrary to *Strickland.*

### e. Abandonment of insanity/mental defect defense and counsel's ineffectual closing argument with respect to diminished capacity

■ Boyce complains that his trial attorney abandoned a defense that Boyce was not guilty by reason of insanity or mental defect without first obtaining an independent expert opinion as to whether Boyce had "blacked out" during the evening of the shooting. Although Boyce speaks of abandoning "a defense of not guilty by reason of insanity or mental defect" (Amended Pet. for State Post-conviction Review at 7) his supporting facts establish that he is really complaining about his trial lawyer's failure to pursue an intoxication defense.[10] Boyce states that he grew up in an alcoholic home environment and that he is a chronic alcoholic and has been since his early teen years. Boyce asserts that intoxication is a defense to the charge of murder, yet his attorney never informed him that he was waiving the defense, and, thus, Boyce did not knowingly waive this defense. As a separate ineffective assistance of counsel claim Boyce contends that trial counsel's closing argument with respect to diminished capacity was

---

9. The question of this contempt sentence, and its legality, is not before this court though there was some question during the post-conviction proceedings as to the status of that sentence. (*Id.* at 104–06.)

10. The Maine statutory provision for the insanity defense provides that "[a]n abnormality manifested only by repeated criminal conduct or excessive use of alcohol, drugs or similar substances, in and of itself, does not constitute a mental disease or defect." 17–A M.R.S.A. § 39(2).

too little, too late and, though counsel was aware of the problem early on, he failed to frame the concern in a motion *in limine.* This failure was compounded by his attorney's failure to move for a bill of particulars to make it clear what state of mind Boyce would need to defend against. Boyce contends that his trial counsel, recognizing his vulnerability on this score, should have sought assistance from more experienced trial counsel.

The post-conviction court stated with respect to the abandonment of the intoxication defense that the claim "was mooted by his acquittal on the 'intentional and knowing' murder charge, that being the sole allegation for which intoxication might serve as a defense." (Post-conviction Decision & Order at 8.) The court concluded that there was no prejudice "as a matter of law" because the intoxication defense was not available vis-à-vis the depraved indifference murder count. (*Id.*) Maine law provides that "evidence of intoxication may raise a reasonable doubt as to the existence of a required culpable state of mind," 17–A M.R.S.A. § 37(1) (West 1982), but this defense is not available for offenses other than those that carry an intentional or knowing culpable state of mind. *Id.* § 37(2). Having determined that the objective "should have been aware" component of the depraved indifference statute is constitutional as applied to the facts in Boyce's case, the determination by the post-conviction court that Boyce was not prejudiced by his attorney's failure to pursue this intoxication defense is not unreasonable or contrary to federal law. Likewise, his attorney's closing argument concerning Boyce's diminished capacity may relate to his *acquittal* of intentional or knowing murder but it could not establish prejudice as to the jury's conclusion that Boyce was guilty of the depraved indifference murder count.

### 3. *Catch-all Unconstitutionality*

Finally, Boyce argues that the Maine Court's order denying him post-conviction relief and the Maine Supreme Court's order denying him a certificate of probable cause to appeal that unfavorable post-conviction decision are contrary to or involve an unreasonable application of clearly established federal law and resulted in a decision that reflected an unreasonable determination of the facts in light of the evidence presented to the lower courts. In light of my conclusions above concerning the specific challenges Boyce makes to his process in the State courts and after painstaking review of the records of these proceedings I can identify no possible theory or factual basis to support this catch-all claim.

### *CONCLUSION*

For these reasons I recommend that the Court **DENY** this 28 U.S.C. § 2254 petition without further proceedings.

### *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.